THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DELANEY HOPE, Defendant-Appellant.

Third District   No. 3—85—0242

Opinion filed March 27, 1986.

Robert Agostinelli and Verlin R. F. Meinz, both of State Appellate Defender's Office, of Ottawa, for appellant.

Edward F. Petka, State's Attorney, of Joliet (John X. Breslin and Rita Kennedy Mertel, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE SCOTT delivered the opinion of the court:

Delaney Hope, the defendant, was by indictment charged with the offenses of attempted murder, aggravated criminal sexual assault and armed violence. After trial by jury he was convicted of the offenses and sentenced to concurrent terms of 30 years' imprisonment.

During the trial of the defendant, evidence established that Jo-Lynda Reyes and her husband returned to their Crest Hill apartment in Joliet at about 10:30 p.m. on October 26, 1984. Mrs. Reyes took the family's laundry to the laundry room which was located in the apartment complex. She made several trips to and from the laundry room and her apartment. On her last trip to the laundry room, she noticed a small yellow Chevy truck parked outside the complex, and on a nearby washer she noticed a small piece of paper upon which were the words "Dr. Chinnici Saturday 10:15 A.M." While she was folding her laundry, a black man, the defendant, entered the room. He quickly positioned himself back of Mrs. Reyes, put a knife to her neck, threatened to kill her, and forced her to the floor. The defendant then closed the door, unscrewed the light bulb, undid his clothes and removed Mrs. Reyes' clothing. In street talk he instructed Mrs. Reyes to rub his penis on her "sex organ" and then attempted to insert his penis in her. Defendant concedes that the insertion, if any, was very slight. The defendant then redid his clothes and ordered Mrs. Reyes to get up from the floor. Along with Mrs. Reyes, he left the laundry room and proceeded towards the outside of the building. When they paused on a landing, Mrs. Reyes removed defendant's hand from her mouth and began screaming. The defendant then stabbed Mrs. Reyes a number of times. The husband of Mrs. Reyes, upon hearing her screams, came to her aid and arrived in time to see a man run out of the building and drive off in a small yellow truck.

Mrs. Reyes was taken to the emergency room of a hospital. Mrs. Reyes indicated to hospital personnel that her assailant had been unsuccessful in raping her; however, she had been repeatedly stabbed

and there was concern that one stab wound may have penetrated her abdomen. This fear proved to be groundless, and Mrs. Reyes survived and apparently physically recovered from her wounds.

Through fingerprint identification, a police lineup, the yellow truck, the note regarding an appointment with Dr. Chinnici and other investigatory procedures the defendant was apprehended, indicted, tried by a jury, found guilty and sentenced as we have heretofore set forth.

Further reference to the evidence presented to the trial court and the procedural history of this case will be set forth as the same becomes pertinent to the determination of the issues raised in this appeal.

■ The defendant first argues that his conviction for aggravated criminal sexual assault should be reversed since the sex assault law of which the defendant's offense is a part is so unreasonable in its definitions and applications as to violate the due process clauses of the United States and Illinois constitutions. The State counters this argument by claiming that the defendant has waived the right to challenge the constitutionality of the aggravated criminal sexual assault statute.

This court has adhered to the established rule that in order to challenge the constitutionality of a statute the defendant must raise the issue in the trial court. (*People v. Kerker* (1984), 121 Ill. App. 3d 1072, 460 N.E.2d 771.) It has also been held by this court that specific objections waive all grounds not specified and presented to the trial court. A defendant cannot raise on appeal in a post-trial motion a question which was not properly presented to the trial court. *People v. Bitner* (1980), 89 Ill. App. 3d 1106, 412 N.E.2d 721.

In the instant case, the defendant filed a motion to dismiss the two counts of the indictment which alleged that the defendant committed the offense of aggravated criminal sexual assault. In this motion the defendant claimed that "sex organ" was not defined in the statute and without such a definition it was impossible to determine what constituted "penetration." It was also argued in support of the motion that without such a definition it would be impossible to determine when "contact" occurred pursuant to the aggravated criminal assault statute. The trial judge denied defendant's motion by referring to a dictionary definition of "sex organ" as including the external genitalia.

During a conference on jury instructions, the defendant objected to the instruction defining "penetration." Counsel for defendant argued that the statutory definition was so vague as to deny "due process" of law in that the legislature had defined "penetration" as

"contact," which is contrary to the common and ordinary meaning of the term.

The foregoing constituted the only objections to the aggravated criminal sexual assault statute. Each objection was specific as to the definitions or lack of definitions of a term included in the statute. In his post-trial motion, the defendant attacks the constitutionality of the criminal sexual assault law of 1984 and particularly the aggravated criminal sexual assault provision (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 12—14), which sets forth a number of aggravating circumstances which create the crime of aggravated criminal sexual assault. In his post-trial motion, the defendant reiterates his claim that the definition of "penetration" in the statute is unconstitutionally vague but then launches into a new attack on the statute by arguing that although under the new law aggravated criminal sexual assault is punished as a Class X felony, it has a lesser *mens rea* than criminal sexual abuse (Ill. Rev. Stat., 1984 Supp., ch. 38, pars. 12—15, 12—16), which is punished as a misdemeanor.

The provisions of the criminal sexual assault law of 1984 will undoubtedly be tested as to their constitutionality, but in the instant case there has been preserved for review by this court only the question as to whether the definition of the word "penetration" as found in section 12—12(f) of the Criminal Code of 1961 (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 12—12(f)), is so vague as to deny due process of law.

The provision of the new act which defines penetration reads as follows:

> "(f) 'Sexual penetration' means any contact, however, slight, between the sex organ of one person and the sex organ, mouth or anus of another person, or any intrusion, however slight, of any part of the body of one person or of any animal or object into the sex organ or anus of another person, including but not limited to cunnilingus, fellatio or anal penetration. Evidence of emission of semen is not required to prove sexual penetration."

Ill. Rev. Stat., 1984 Supp., ch. 38, par. 12—12(f).

We quarrel not with defendant's argument that the foregoing "definition" of penetration is a departure from its former and commonly understood meaning. The word "penetration" is commonly understood to mean to pierce or pass into or through or to enter the interior. Black's Law Dictionary defines penetration as "a term used in criminal law and denoting (in cases of alleged rape) the insertion of the male part into the female parts to however slight an extent; and by which insertion the offense is complete without proof of emission."

Black's Law Dictionary 1021 (5th ed. 1979).

The definition defining "penetration" as any contact between the sex organ of one person and the sex organ, etc., of another person constitutes a departure from its common law and prior statutory definition. See *People v. Cole* (1976), 39 Ill. App. 3d 559, 350 N.E.2d 543, and Ill. Rev. Stat. 1983, ch. 38, par. 11—1(b).

In the area of sexual crimes, it has been the law that offenses of deviate sexual assault requires simple contact between the sex organ of one individual and the mouth or anus of another individual. (Ill. Rev. Stat. 1983, ch. 38, par. 11—2; *People v. Utinans* (1977), 55 Ill. App. 3d 306, 370 N.E.2d 1080; *People v. Oliver* (1976), 38 Ill. App. 3d 166, 347 N.E.2d 865.) The legislature has chosen to enlarge an element of the crime of rape so that contact of sexual organs between an accused and a victim will have the same legal effect as the penetration or actual entering the body of the victim. This addition to an element of the crime of rape was accomplished by the legislature redefining by statutory enactment the meaning of "sexual penetration." We know of no prohibition against the legislature's right to declare and define what conduct constitutes a crime. (*People v. Gurell* (1983), 98 Ill. 2d 194, 456 N.E.2d 18; *People v. Steppan* (1985), 105 Ill. 2d 310, 473 N.E.2d 1300.) Our supreme court has recognized that the legislature can change the ordinary and popular meaning of words in a statute. *People v. La Pointe* (1981), 88 Ill. 2d 482, 43 N.E.2d 344.

■ We note that in the instant case, while the defendant made contact with his sex organ with the sex organ of the victim, there is also evidence in the record that his penis was inserted into the sex organ of the victim. The insertion was slight, but however slight it may have been it fulfills the element of the crime of rape concerning penetration which has existed throughout the common law and all prior statutory enactments in our State regarding the crime. We disagree with the defendant's argument that defining "sexual penetration" as a contact, however, slight, between the sex organ of one person and the sex organ, mouth or anus of another person is violative of the due process of law principle.

■ The defendant further asserts that he should not have been convicted of attempted murder since such conviction is based on the same physical acts as the armed violence conviction.

Both the charge for attempted murder and armed violence were based upon the repeated stabbing of the victim while on the stairs of the apartment building. The stabbing was rapid and done repeatedly. The victim was stabbed in the left hip, the abdomen, the back and side. The seminal case involving multiple convictions carved from a

single physical act is *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273. The gist of *King* is that prejudice results to the defendant in those instances where more than one offense is carved from the same physical act. The court in *King* further held that when more than one offense arises from a series of incidental or closely related acts and the offenses are not by definition lesser included offenses, convictions with concurrent sentences can be entered. 66 Ill. 2d 551, 566, 363 N.E.2d 838, 844, 845.

In the instant case both of the offenses, to-wit, attempted murder and armed violence, are Class X felonies; however, the courts have held that armed violence is the lesser offense of the two. *People v. Baity* (1984), 125 Ill. App. 3d 50, 465 N.E.2d 622; *People v. Sass* (1979), 73 Ill. App. 3d 554, 392 N.E.2d 399.

The reviewing courts have not been consistent in determining what constitutes one act. The State argues each stabbing of the victim is a separate physical act that supports a separate conviction and supports this contention with cases that reach a determination. There are, however, cases that hold to the contrary. A number of factors should be considered, *i.e.*, did intervening acts or events occur between repeated stab wounds, whether the acts all occurred at the same location.

We believe that the better reasoned view is that the defendant's conduct in stabbing the victim four times in rapid succession, there being no intervening acts or events, there being a single victim and all the stabbings occurred at the same location leads to the conclusion that the defendant's conduct gave rise to only one offense. *People v. Baity* (1984), 125 Ill. App. 3d 50, 46 N.E.2d 622.

The defendant argues that if we reach the conclusion as we have done, that the stabbings gave rise to only one offense, then in this particular case the conviction for attempted murder should be the lesser offense. This argument of the defendant is predicated upon the fact that the trial court gave a faulty instruction defining murder, faulty because the instruction included both the mental state of an intent to kill and the mental state to do great bodily harm, and that an attempted murder case must focus solely on the mental state of an intent to kill and no other mental state such as to do great bodily harm will support an attempted murder conviction.

In considering defendant's argument, we initially note that the defendant waived any error in the attempt (murder) instruction by failing to object to the same. Our supreme court had a similar problem presented to it in the case of *People v. Roberts* (1979), 75 Ill. 2d

1, 387 N.E.2d 331, and held that where the evidence was not "closely balanced" a defective instruction defining murder in an attempted murder prosecution was waived in the absence of an objection in the trial court to such error. Our supreme court held that such a defect was waived unless it was substantial and the interest of justice required its consideration as a "grave error" pursuant to Supreme Court Rule 451(c) (87 Ill. 2d R. 451(c)).

In the instant case, the evidence was not "closely balanced." The evidence is overwhelming of the defendant's intent to kill the victim. His repeated and wanton stabbing of the helpless victim established the defendant's intent to kill.

As previously stated, the defendant should not have been convicted of both attempted murder and armed violence. We are of the opinion that the armed-violence conviction should be vacated, and we so vacate it. We do not, however, deem it necessary to remand this case for resentencing. We find no indication in the record that the trial court was influenced by any one offense in sentencing the defendant on the remaining offenses. (*People v. Payne* (1983), 98 Ill. 2d 45, 456 N.E.2d 44.) We further recognize that 30-year concurrent sentences are appropriate for the brutal crimes committed on the victim. We also note that the defendant was on parole for rape, deviate sexual assault, attempt (murder) and aggravated kidnaping when the instant offense occurred.

■ Lastly, the defendant argues that the trial court did not grant to him the proper number of days against his sentence. As previously noted, the defendant was sentenced to concurrent terms of 30 years of imprisonment on his three convictions. While incarcerated for the sentences imposed in this case the defendant wrote to the trial court regarding his claim of credit against the sentences. The trial court found that the defendant had been arrested on October 30, 1984, and that he was taken to the Department of Corrections on December 12, 1984, and consequently he was entitled to a sentence credit of 42 days. It is conceded by the State that this computation was erroneous and that defendant is entitled to 44 days of credit. The defendant, however, claims that he is entitled to an additional 121 days of credit or a total of 165 days. The claim for the additional 121 days is predicated on the time the defendant spent in the custody of the Department of Corrections as a parole violator. This court has been previously confronted with this question and has determined that a defendant is not entitled to credit time against his sentence for time spent in custody as the result of an unrelated crime or conviction. This determination is in keeping with section 5—8—7(b) of the Unified

Code of Corrections (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—7(b)), which allows a defendant credit against his sentence for time spent in custody as a result of the offense for which the sentence was imposed. (*People v. Stuckey* (1981), 93 Ill. App. 3d 260, 417 N.E.2d 203; *People v. Vilt* (1985), 139 Ill. App. 3d 868.) We recognize that there is a divergence of views between the appellate court districts on this question; however, we adhere to the views expressed in the cases of *Stuckey* and *Vilt*.

For the reasons set forth, the defendant's conviction and sentence imposed thereon for the offense of armed violence is vacated. His convictions for the offenses of attempt (murder) and aggravated criminal sexual assault and the sentences imposed thereon are affirmed, with the defendant receiving 44 days' credit time against each of his two concurrent terms of 30 years' imprisonment.

Affirmed in part and reversed in part.

HEIPLE, P.J., and BARRY, J., concur.