THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BRIAN K. WILLIAMS, Defendant-Appellant.

Second District   No. 2—86—0415

Opinion filed May 12, 1987.

G. Joseph Weller and Manuel S. Serritos, both of State Appellate Defender's Office, of Elgin, for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE NASH delivered the opinion of the court:

Defendant, Brian K. Williams, was charged by information with the offenses of attempted murder (Ill. Rev. Stat. 1983, ch. 38, par. 8—4(a)), armed violence (Ill. Rev. Stat. 1983, ch. 38, par. 33A—2), and two counts of aggravated battery (Ill. Rev. Stat. 1983, ch. 38, pars. 12—4(a), 12—4(b)(1)). Following a bench trial, he was found guilty of armed violence and two counts of aggravated battery, but not guilty of attempted murder, and was sentenced, on the armed violence conviction only, to 12 years' imprisonment. On appeal, the defendant contends, first, that the trial court erred when it convicted him of armed violence and the predicate offense of aggravated battery, and, also, that the court abused its discretion when it sentenced him to a 12-year term of imprisonment.

The following evidence was adduced at trial. Officer Senneke of the Naperville police department testified that on May 16, 1985, while on patrol and responding to a call, he and his partner saw and followed the subject vehicle, a Spring Green lawn maintenance truck. The truck stopped, and a man identified as the defendant alighted and asked the plainclothes officers for directions to the police station because "he just committed a crime *** that *** he just hurt some lady." At that time the police officers handcuffed the defendant, read him his *Miranda* rights, and transported him to the station house.

At the police station, the officers removed the handcuffs and again admonished the defendant of his *Miranda* rights. Officer Senneke testified that the defendant related the following account: The defendant had reported to work and then drove to a jobsite, where he discovered that one of the lawnkeeping machines did not work properly. When defendant returned the machine to the repair shop and called his office, he was told to continue working despite the rain and then drove to 604 Ticonderoga in Naperville, intending to work on the Reynolds' lawn. When he found no one at home, he walked to the home of a neighbor, Mrs. Mary Glover, the complainant, in order to call Mrs. Reynolds.

Mrs. Glover accompanied the defendant across the street to the Reynolds' residence, where she indicated areas on the lawn that needed to be serviced. When she had bent over to show him these areas, their shoulders apparently bumped. At this time Mrs. Glover "got very angry with him and started yelling *** and cussing him *** and begin to flail *** her arms [at him] for what he thought was no

reason." The defendant told Officer Senneke that he remembered striking Mrs. Glover; he also realized that he had a screwdriver in his hand and that his hands were suddenly sore. The defendant stated that he became very scared, ran to his truck, returned the aerating machine to the flatbed trailer, and drove away. Two blocks from the Reynolds' home the defendant threw the screwdriver away, and it was later recovered.

Officer Senneke testified further concerning additional interviews with the defendant at the station house, in one of which defendant remembered that he had poked Mrs. Glover in the back with the screwdriver. Senneke related that at a third interview the defendant stated that he had not been provoked and could not explain why he struck Mrs. Glover.

On cross-examination Officer Senneke testified that the defendant had stopped his own vehicle, without police intervention, at approximately 11:45 a.m. Senneke also identified defendant's exhibit No. 1 as the defendant's first statement wherein he described that he wanted to help the victim, but that she ran away. Senneke also related that the defendant had informed him that he had been very tense and under pressure and that defendant had stated that he thought that Glover had hit him and that he had hit her back, realizing that the screwdriver was in his hand, and that he ran to the truck to get help.

Mary Glover, the complainant, substantially corroborated Officer Senneke's account. On the day in question, at approximately 11 a.m., the defendant, dressed in a Spring Green uniform, had rung her bell and related his problem. Glover testified that when she bent down to look at the flower beds, she first felt the defendant grab her shoulder and then the blow in the middle of her back. She also described the blows to her face and that the defendant grabbed her throat. She fell to the ground, screamed, and called him an obscene name. While on the ground she also felt blows to her legs. Glover called for assistance, and the police arrived a few minutes later. She was hospitalized for approximately five days.

Dr. Terrence Lemberger, an emergency medical doctor, testified that he observed Mrs. Glover on the day in question and described her injuries—cuts on her face, a bruise to her eye, and a puncture wound to the chest as well as to the back. X rays revealed that Glover sustained a 20% collapsed left lung. Dr. Lemberger opined that the wound to Glover's chest had been potentially fatal. Dr. William Thatcher, a specialist in cardiovascular surgery, substantially corroborated Dr. Lemberger's observations with regard to Glover's injuries. Thatcher could not offer an opinion on the depth of the chest wound,

although he testified that the wound was three or four millimeters in length.

On cross-examination, Dr. Thatcher testified that plastic surgery had been carried out and, furthermore, that Mrs. Glover had been kept in intensive care because she had vomited blood. Dr. Thatcher stated that no facial bones had been broken and described the injuries as to the soft tissues.

The defendant testified in trial that Mrs. Glover had voluntarily accompanied him across the street and that when she bent down to look at the grass, he had, without reason, struck her in the back with a screwdriver. He suddenly felt a rush of blood to his head and became dizzy. He did not realize that he had a screwdriver in his hand, although he continued to hit Glover. The defendant became afraid and ran approximately 10 feet, then turned around and said, "Please wait. Let me help you." The defendant denied any intention that he wanted to stab or kill Glover.

The defendant also testified that he pulled the turf plugger back on the trailer and again called out to Glover, "Please wait," but that Glover screamed louder and he drove away and attempted to locate the nearest police station. He stopped at a gas station and ran to the unmarked police car, telling the occupants that "I just committed a crime. *** I just beat up some lady."

The defendant testified that he had expected not to work on the day of the offense because of the rain, but that his employer had told him to continue working and that he was angry with his employer. He also explained that he had problems with his pregnant girlfriend.

Following oral argument, the court, noting the two stab wounds sustained by Glover, acquitted the defendant of the attempted murder charge but convicted him of armed violence and the two aggravated battery charges. At the sentencing hearing, two witnesses, Samuel Broussaid and Mike McCaughn, testified with regard to two incidents of the defendant's aggressive behavior. In the first, the defendant had slammed another man against a car, and, in the second, he had struck and kicked another man repeatedly. In addition, the defendant's mother, father, stepfather, and sister all testified with regard to the defendant's nonviolent nature, although the defendant's father stated that his son had punched him during an altercation with his ex-wife, the defendant's mother.

Following argument and the defendant's own statement, the court, noting the nature of the injury that was inflicted on the victim, the defendant's disciplinary problems in school and in the military, as well as his history of emotional instability, sentenced him to a 12-year

term of imprisonment on the armed violence charge and this appeal followed.

The trial court found the defendant guilty of armed violence (count II), which was premised upon allegations that the defendant stabbed the victim, causing great bodily harm, and was on the underlying felony of aggravated battery causing great bodily harm pursuant to section 12—4(a) of the Criminal Code of 1961 (Code) (Ill. Rev. Stat. 1983, ch. 38, par. 12—4). The court also found the defendant guilty of two counts of aggravated battery (counts III and IV). Count III charged the defendant with aggravated battery through the use of a deadly weapon pursuant to section 12—4(b)(1) of the Code (Ill. Rev. Stat. 1983, ch. 38, par. 12—4(b)(1)) by stabbing the victim with a screwdriver and striking her about the face. Count IV charged the defendant with aggravated battery causing great bodily harm pursuant to section 12—4(a) of the Code (Ill. Rev. Stat. 1983, ch. 38, par. 12—4(a)) by stabbing the victim with a screwdriver and striking her about the face. Although the court found the defendant guilty of all three counts, it sentenced him only on the armed violence charge, stating:

"Counts II [armed violence predicated on aggravated battery causing great bodily harm] and III [aggravated battery use of a deadly weapon] would be equivalent, in essence the same act. And the court would not have authority to sentence on the counts—aggravated battery counts."

On appeal, the defendant requests that we vacate the two aggravated battery convictions and remand the cause for a new sentencing hearing based on our supreme court's holding in *People v. Donaldson* (1982), 91 Ill. 2d 164, 435 N.E.2d 477, that the offense of armed violence and the underlying felony cannot stand where a single physical act is the basis for both charges. (91 Ill. 2d 164, 170, 435 N.E.2d 477.) The State responds that the defendant's request for remand for sentencing on the armed violence charge must be denied since the record demonstrates that the trial court did not rely on the fact that the defendant had been found guilty of aggravated battery when it sentenced him for armed violence. In addition, with respect to count III (aggravated battery through the use of a deadly weapon), the State concedes that the initial act alleged therein—the stabbing of the victim with a screwdriver—is the same act upon which the defendant's armed violence conviction has been premised and, thus, agrees that this conviction should be vacated. However, with respect to count IV (aggravated battery causing great bodily harm), on which the armed violence charge is based, the State contends that as the record dem-

onstrates that the defendant committed more than one act, this conviction need not be vacated and should be remanded for imposition of sentence under *People v. Dixon* (1982), 91 Ill. 2d 346, 438 N.E.2d 180.

■ Initially, we observe that our examination of the transcript of the sentencing hearing, as well as the defendant's post-trial motion, reflects that he did not include there the issue he now presents for our resolution. We have repeatedly held that the failure to raise an issue in a post-trial motion after a bench trial will result in a waiver of that issue for purposes of review unless it relates to the sufficiency of the evidence to sustain the defendant's conviction. (See, *e.g.*, *People v. Steele* (1984), 124 Ill. App. 3d 761, 768, 464 N.E.2d 788; *People v. Gutierrez* (1982), 105 Ill. App. 3d 1059, 1063, 433 N.E.2d 361; *People v. Christiansen* (1981), 96 Ill. App. 3d 540, 542, 421 N.E.2d 570.) However, we will address this matter to determine whether plain error occurred. See *People v. Baity* (1984), 125 Ill. App. 3d 50, 51 n.1, 465 N.E.2d 622.

■ First, we find that the defendant is not entitled to a new sentencing hearing for the armed violence offense. As the State correctly points out, the trial judge was aware that he could not sentence defendant for the aggravated battery convictions, and, thus, it is reasonable for us to assume that he did not rely on the fact that the defendant had been found guilty of aggravated battery when he sentenced him for armed violence. (See *People v. Baity* (1984), 125 Ill. App. 3d 50, 54, 465 N.E.2d 622.) The well-established law in Illinois is that a remand for resentencing is not necessary, where, as in this case, the reviewing court can determine from the record that the weight the trial court placed on an improper factor was so insignificant that it did not lead to a greater sentence. (*People v. Bourke* (1983), 96 Ill. 2d 327, 332, 449 N.E.2d 1338; *People v. Edwards* (1984), 128 Ill. App. 3d 993, 1007, 471 N.E.2d 957.) In light of the trial court's remarks, any error which may have occurred was harmless.

The State correctly agrees that, with regard to the aggravated battery convictions, we must vacate count III, as it and the armed violence charge are improperly carved from the same act, under the standard enunciated in *People v. Donaldson* (1982), 91 Ill. 2d 164, 170, 435 N.E.2d 477.

■ We find that the trial court erred in considering that counts II and IV of the indictment were carved out of a single act. In our view the defendant could properly be convicted and sentenced in both instances. The trial court heard testimony that the defendant stabbed the victim in the back and also struck her in the face. These actions

constituted separate physical acts even though they were closely related, and, thus, both convictions were proper. *People v. Nelson* (1985), 130 Ill. App. 3d 304, 310-11, 474 N.E.2d 23; see also *People v. Dixon* (1982), 91 Ill. 2d 346, 355-56, 438 N.E.2d 180; *People v. Myers* (1981), 85 Ill. 2d 281, 288-89, 426 N.E.2d 535; *People v. Hutson* (1985), 138 Ill. App. 3d 553, 557-58, 486 N.E.2d 259; *People v. Jones* (1984), 128 Ill. App. 3d 842, 846, 471 N.E.2d 590; *People v. Post* (1982), 109 Ill. App. 3d 482, 490-92, 440 N.E.2d 631. But see *People v. Ellis* (1986), 143 Ill. App. 3d 892, 493 N.E.2d 739; *People v. Williams* (1986), 143 Ill. App. 3d 658, 665-66, 493 N.E.2d 362; *People v. Hope* (1986), 142 Ill. App. 3d 171, 175-76, 491 N.E.2d 785; *People v. Baity* (1984), 125 Ill. App. 3d 50, 465 N.E.2d 622.

■ We emphasize that the case now before us is distinguishable factually from other cases that found multiple convictions improper where the prosecutor's intent, as gleaned from the charging instrument, was to treat the defendant's conduct as a single act. (See, *e.g., People v. Ellis* (1986), 143 Ill. App. 3d 892, 895, 493 N.E.2d 739; *People v. Williams* (1986), 143 Ill. App. 3d 658, 666, 493 N.E.2d 362; *People v. Baity* (1984), 125 Ill. App. 3d 50, 54, 465 N.E.2d 622.) In this respect we note that while the armed violence count of the indictment was premised solely on the defendant's act of committing aggravated battery causing great bodily harm by stabbing the victim, count IV of the indictment, in addition to alleging aggravated battery causing great bodily harm by stabbing, also alleged the defendant's acts of striking the victim about the face. Thus, it is clear that count IV is composed of two separate actions, one of which was not alleged in the armed violence charge. We conclude that the conviction for aggravated battery under count IV of the indictment should not be vacated and should be remanded for imposition of sentence. *People v. Dixon* (1982), 91 Ill. 2d 346, 438 N.E.2d 180; *People v. Luttrell* (1985), 134 Ill. App. 3d 328, 332, 480 N.E.2d 194.

■■ We also find that the defendant's 12-year term of imprisonment was a proper exercise of sentencing discretion. A conviction for armed violence, a Class X felony, carries a sentence of from 6 to 30 years. (Ill. Rev. Stat. 1983, ch. 38, par. 33A—3.) Although his sentence was within the statutory range, the defendant argues that certain mitigating factors warrant a reduction in his sentence. See, *e.g., People v. Nelson* (1982), 106 Ill. App. 3d 838, 847, 436 N.E.2d 655.

Although a reviewing court is authorized to reduce a sentence under Supreme Court Rule 615(b) (87 Ill. 2d R.615(b)), the determination of imposition of a sentence is primarily within the discretion of the trial court. The trial court is required to fashion a sentence that bal-

ances the need to protect society and the potential rehabilitation of the offender. (*People v. Rosa* (1982), 111 Ill. App. 3d 384, 391-92, 444 N.E.2d 233.) A sentence will not be disturbed on appeal unless it diverges from the purpose and the spirit of the law or is highly disproportionate to the offense. *People v. Nelson* (1982), 106 Ill. App. 3d 838, 846, 436 N.E.2d 655.

The defendant argues that mitigation for such an offense is shown by his youth, his gainful employment, his lack of prior criminal convictions, and the support from his family members. We find, however, that the testimony which indicated the defendant's previous violent nature, the brutality of the offense, and the extent of the victim's injuries, as well as the senselessness and irrationality of his actions, demonstrates that sufficient factors in mitigation are absent in this case and support the sentence imposed by the trial court. *People v. La Pointe* (1981), 88 Ill. 2d 482, 431 N.E.2d 344; *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.

Accordingly, the judgment and sentence of the circuit court are affirmed with respect to the armed violence charge. Count III is vacated, and count IV is affirmed and remanded to the trial court for imposition of sentence.

Affirmed in part, vacated in part, and remanded.

REINHARD and UNVERZAGT, JJ., concur.